IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: BOSTON SCIENTIFIC CORP.
       PELVIC REPAIR SYSTEMS
        PRODUCT LIABILITY LITIGATION        MDL No. 2326

---------------------------------------------------------------

THIS DOCUMENT RELATES TO ALL CASES

**PRETRIAL ORDER # 98**
(Boston Scientific Corporation's Cross Motion to Compel and For Costs)

Pending before the court is the motion of Boston Scientific Corporation ("BSC") to compel certain discovery from nonparties, Daniel J. Christensen and MedStar Funding, LC (collectively "MedStar") and for sanctions for alleged discovery abuses. (ECF No. 729). MedStar has filed a response in opposition to the motion, (ECF No. 740), and the time for filing a reply memorandum has expired. For the reasons that follow, the court **GRANTS** BSC's motion to compel discovery, but **DENIES** its motion for sanctions.

**I.    Background**

This multidistrict litigation ("MDL"), involving surgical mesh products used to treat pelvic organ prolapse and stress urinary incontinence, is one of seven similar MDLs pending in this district. In September 2013, in one of the sister MDLs, American Medical Systems, Inc. ("AMS") sought discovery from nonparties Medstar Funding, LC and Daniel J. Christensen. AMS had been told by one of its medical consultants that MedStar worked with an entrepreneur, named Otto Fisher, and his companies,

1

Neurosurgical Group, Inc. ("One Point") and Physicians' Surgical Group ("PSG"), to arrange and subsidize mesh revision and removal surgeries for plaintiffs in the AMS MDL. The purpose of the discovery was to learn what role MedStar, a medical receivables factoring entity, played in facilitating the surgeries, and to determine whether these businesses were engaged in a scheme to fraudulently inflate the value of transvaginal mesh cases. MedStar objected to AMS's discovery demands. Consequently, a hearing was scheduled, which resulted in the entry of a Pretrial Order ("PTO 88") in the AMS MDL.

Subsequently, other transvaginal mesh manufacturers, including BSC, became interested in conducting their own discovery against MedStar, and issued subpoenas for the deposition of Christensen and for the production of documents from MedStar Funding, LC. Having the benefit of the court's ruling in the AMS MDL, the other manufacturers, including BSC, agreed to be bound by the terms of PTO 88 in conducting this discovery. In addition, the manufacturers generally agreed that they would coordinate with each other to schedule Christensen's deposition at the same time so as not to inconvenience him by taking multiple depositions.

Over the next several months, Christensen's deposition was delayed by a series of derivative skirmishes, but finally proceeded on February 19, 2014. At the deposition, Christensen refused to answer questions on a range of topics, either asserting that the information was protected as a "trade secret," or that the questions were unrelated to Otto Fisher, One Point, or PSG, and therefore were outside the scope of inquiry allowed by PTO 88.

BSC now seeks an order compelling Christensen to appear at a second deposition and answer the questions he refused to answer at his February 19, 2014 deposition. BSC

2

also requests an order compelling MedStar Funding, LC to produce documents relating to any and all plaintiffs in the BSC MDL regardless of whether they are connected to Otto Fisher, PSG, or One Point. Lastly, BSC asks for an award of sanctions against MedStar for Christensen's failure to fully cooperate at his first deposition, for MedStar's deletion of emails related to Otto Fisher, PSG, and One Point after receiving a subpoena requesting all documents related to those topics, and for Christensen's alleged tampering with documents prior to their production.

## II. Discussion

PTO 88 is the crux of the disagreement between MedStar and BSC. MedStar interprets PTO 88 as limiting the scope of all discovery against it to cases involving Otto Fisher, One Point, or PSG. To the contrary, BSC interprets PTO 88 as limiting the current document production to cases involving Otto Fisher, One Point, and PSG, but not limiting the scope of the deposition of Daniel Christensen. BSC is correct.

As is clear from both the transcript of the hearing and the language of PTO 88, AMS filed two subpoenas; one scheduling the deposition of Daniel Christensen, and one requesting the production of documents from MedStar Funding, LC. MedStar moved to quash both subpoenas. At the hearing, the court addressed the deposition subpoena first, noting that the parties had agreed that Christensen would make himself available for deposition; therefore, the motion to quash was denied. Christensen's only remaining concern related to his deposition was that he did not have sufficient time to comply with the notice. Accordingly, the court granted a protective order and instructed the parties to select a mutually convenient date and time for the deposition. Christensen did not request specific limitations on the topics of inquiry, and none were granted by the court. Indeed, the intent of the court, as expressed at the hearing, was that Christensen's

deposition would be the method by which the parties would discover the extent of MedStar's involvement in funding surgeries for transvaginal mesh plaintiffs; the individuals who referred the plaintiffs to MedStar; how the process worked; who was involved in the process; whether there were other entrepreneurs like Mr. Fisher, and so on. (*See* ECF No. 729-1 at 4).

The remainder of PTO 88 dealt with the second subpoena, requiring the production of MedStar Funding, LC's documents pertaining to all plaintiffs in the AMS MDL. MedStar objected to the subpoena, arguing that it was overly broad and should be limited to records of cases involving Otto Fisher, One Point, and PSG, as they provided the basis for AMS's purported right to discovery against MedStar in the first place. Moreover, of even greater concern to MedStar was the burdensomeness of the subpoena. According to MedStar Funding, LC, it employed only five individuals, and the task of searching its accounts to locate documents relevant to transvaginal mesh, and the 20,000 AMS plaintiffs, would bring its normal business operations to a standstill for a significant period of time. However, MedStar conceded that it could locate the Fisher-related documents with relative ease and could produce them without much inconvenience. MedStar raised additional concerns related to the disclosure of its proprietary forms and business model, arguing that the business of factoring accounts receivable was highly competitive, making its documents trade secrets subject to special protection.

Thus, to balance the needs of the parties, the court initially limited the document production to materials related to Fisher, PSG, and any other entity operated by Fisher, to the extent that the documents involved, arose from, or were pertinent to treatment rendered to or arranged for plaintiffs in the AMS MDL and ordered the parties to

negotiate a protective order to govern the use and disclosure of the documents. The "Fisher" limitations applied to the document production only and were made with an expectation that additional documents might be produced in the future depending upon the outcome of the deposition and initial document review.

Accordingly, BSC's motion to compel a second deposition of Daniel Christensen is **GRANTED.** Moreover, BSC's motion to compel Christensen to answer the questions previously left unanswered is also **GRANTED,** subject to the terms of PTO 69, (ECF No. 646), and PTO 88 in this MDL (ECF No. 748).

Next, BSC asks that MedStar be compelled to produce additional documents related to other transvaginal mesh plaintiffs irrespective of whether their receivables originated through Otto Fisher, One Point, or PSG. In support of its argument, BSC points to testimony by Christensen in which he admits that he can search for the accounts of transvaginal mesh plaintiffs with relative ease if provided with the names of their treating surgeons. In its responsive brief, MedStar does not dispute that this method of searching its documents will substantially reduce the burden about which it complained in the original motion to quash the subpoena for the production of documents. Therefore, BSC's motion to compel additional documents is **GRANTED** as follows: BSC may serve MedStar Funding, LC with a subpoena seeking records using the names of medical providers who performed mesh revision or removal surgeries on plaintiffs in the Wave 1, consolidated West Virginia, and consolidated Florida Pinnacle cases. MedStar Funding, LC shall have **twenty (20) days** thereafter to notify BSC regarding which of those providers have sold accounts receivable to MedStar Funding, LC. BSC and MedStar shall then meet and confer on a reasonable time table for the production of discoverable documents pertaining to the accounts of any of the plaintiffs

5

in the Wave 1, consolidated West Virginia, and consolidated Florida Pinnacle cases.

Finally, BSC seeks sanctions against MedStar for Christensen's failure to fully answer the questions posed to him at his deposition, for his failure to suspend routine document retention procedures after service of the subpoena for production of documents on MedStar Funding, LC, and for his tampering with original documents prior to production. BSC argues that Christensen has repeatedly engaged in efforts to thwart discovery by delaying his deposition, refusing to answer legitimate requests, deleting relevant documents, and tampering with records.

In regard to the spoliation contention, BSC claims that the internet service used by MedStar Funding, LC and Daniel Christensen routinely deleted emails after ten days, and the emails were archived for no more than 120 days. BSC served MedStar Funding, LC with a subpoena in October 2013 requesting all documents related to Otto Fisher, One Point, and PSG. Nevertheless, Christensen failed to contact his internet technology vendor until February 2014 to request that the email deletion function be suspended pending conclusion of discovery. Moreover, when MedStar finally searched archived emails at BSC's request, it failed to conduct a thorough search, using only the search term "Otto Fisher," when it should have also searched using other terms, including PSG aliases and other PSG employee names. According to BSC, as a result of MedStar's failure to preserve and capture relevant emails, evidence has been deleted that can never be reconstructed.

In regard to the tampering claim, BSC relies on testimony by Christensen in which he states that during the course of collecting documents to produce in response to the subpoena, he discovered that some of the paperwork was not fully executed. Consequently, he went ahead and finished what needed to be completed. Christensen

6

admitted that he did not keep a copy of the documents as they appeared before he "put his files in order," but he testified that he did not feel it was necessary, because he did not change anything, he merely completed the documentation. BSC argues that Christensen's alteration of key documents undermines the authenticity and validity of this evidence. Therefore, Christensen should be sanctioned for his inappropriate behavior.

Federal Rule of Civil Procedure 45(g) allows the court to hold an individual in contempt for failing "without adequate excuse" to obey a subpoena or an order related to a subpoena. However, "because the command of the subpoena is not in fact one uttered by a judicial officer, contempt should be very sparingly applied when the nonparty witness has been overborne by a party or attorney." Advisory Committee Note to 1991 Amendment to Rule 45(e).[1] Indeed, some courts have held that before imposing sanctions, an order compelling compliance with a subpoena must issue, *see, e.g., In re Application of the Kingdom of Morocco,* No. M8–85, 2009 WL 1059786, at *2 (S.D.N.Y. Apr. 16, 2009), and the party seeking to hold an individual in contempt must show by clear and convincing evidence that the individual violated the court's order. *Robin Woods, Inc. v. Woods,* 28 F.3d 396, 398–99 (3d Cir. 1995); *National Organization for Women v. Operation Rescue,* 37 F.3d 646, 662 (D.C.Cir. 1994).

In this case, the subject of collecting and producing emails apparently did not arise until Otto Fisher was deposed shortly before Christensen. Christensen made it clear that he did not interpret the subpoena to require the collection and production of emails, nor did he understand that BSC expected him to preserve emails. Nonetheless, when asked, Christensen promptly retrieved the "Otto Fisher" emails that were still

---

[1] Federal Rule of Civil Procedure 45(e) became Rule 45(g) in the 2013 Amendments.

7

available through his internet vendor and produced them to BSC. Accordingly, Christensen attempted to comply with the subpoena as he understood it, and as it was subsequently explained to him. Similarly, although Christensen's decision to clean up his paperwork before producing it was perhaps inappropriate, BSC has not demonstrated any prejudice flowing from the alterations made by Christensen. The legality or enforcement of the agreements between Christensen and the physicians is of no immediate consequence to BSC. The nature of the agreements and their effect on the claimed damages are what matters. Christensen claims only to have executed documents that were not, but should have been, executed. Therefore, the "tampering" did not change the content at issue and thus appears harmless in this context.

Lastly, Christensen had an excuse for failing to answer some of the questions posed to him at deposition. He simply misunderstood the intent of PTO 88. Early in the deposition, counsel for Christensen explained his understanding of the limitations on the scope of the deposition imposed by PTO 88. At that point, counsel for BSC should have contacted the undersigned Magistrate Judge to obtain a ruling on the dispute, as required by the deposition protocol. (ECF No. 327 at 4). Had that step been taken, and an order been issued compelling Christensen to answer the questions, then BSC may have been entitled to sanctions for Christensen's subsequent failure to comply with the court order. However, that is not what happened here. Therefore, the undersigned sees no basis for an order of contempt, and BSC's motion for sanctions is **DENIED.**

The court **DIRECTS** the Clerk to file a copy of this order in 2:12-md-2326, and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2:14-cv-16326. In cases subsequently filed in this district, a copy of the most

recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at **http://www.wvsd.uscourts.gov**.

**ENTERED:** May 14, 2014

Cheryl A. Eifert
United States Magistrate Judge